# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| VINCENT FRIED, | Case No.: 2:18-cv-00689-APG-BNW |
| Plaintiff | **Order Granting Motion for Summary Judgment** |
| v. | [ECF No. 27] |
| WYNN LAS VEGAS, LLC, | |
| Defendant | |

Plaintiff Vincent Fried sues his former employer, Wynn Las Vegas, LLC, for gender discrimination, hostile work environment, and retaliation. Fried was a manicurist in a salon at the Wynn hotel. He contends he was fired while similarly situated female manicurists involved in the same incident that led to his termination were not fired. He also alleges he was subjected to a hostile work environment because he was (1) told to wear a wig to look like a female if he wanted more appointments, (2) ordered to continue serving a client who requested sexual contact with him and then was teased about it, and (3) told in response to his complaints about unfair distribution of appointments that he was in a female-related job and should consider a job in cooking if he did not like it. Finally, he contends he was fired in retaliation for complaining about the incident with the client who made sexual comments to him.

Wynn moves for summary judgment, arguing that there is no evidence that Fried was terminated based on gender. Rather, Wynn argues, he was fired because he allowed an underage client to drink alcohol during a pedicure, and a female salon employee was fired for the same conduct during the same incident. Wynn also argues that the comments and incidents about which Fried complains are not sufficiently severe or pervasive to constitute a hostile work

environment. Finally, Wynn argues the retaliation claim fails because the decisionmakers did not know about Fried's complaints.

Fried responds that he has presented sufficient evidence for a jury to decide whether he was fired based on his gender for an incident in which female manicurists also violated Wynn's policy against serving alcohol to underage patrons, but they were not fired. He also contends that he has presented evidence of several incidents over the last four months of his employment that support a hostile work environment claim. Finally, he contends he complained about the client making sexual comments to him and then sought to speak to his supervisor about how she handled the situation and was fired two weeks later. He thus contends the temporal proximity leads to an inference of retaliation.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material

fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Gender Discrimination**

Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a prima facie case of Title VII discrimination by showing (1) the plaintiff belongs to a protected class; (2) he or she was performing according to the employer's legitimate expectations; (3) he or she suffered an adverse employment action; and (4) employees outside of his or her protected class with similar qualifications were treated more favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). If the plaintiff makes out a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). "If the employer does so, the plaintiff must then show that the articulated reason is pretextual either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (quotation omitted).

Fried has established a prima facie case because he has shown that he belongs to a protected class, he was performing according to his employer's expectations up until the terminating event, he was terminated, and female manicurists involved in the incident were not terminated. Wynn has offered a legitimate, non-discriminatory reason for terminating Fried because it asserts Fried knowingly allowed an underage client to consume an alcoholic beverage

during a pedicure, which put Wynn's gaming and liquor licenses in jeopardy. Wynn notes that it terminated a female employee in the salon over the same incident.

Even viewing the facts in the light most favorable to Fried, a reasonable jury could not find the Wynn's explanation was pretext for gender discrimination. Fried was fired after an incident where champagne was served to underage clients at the salon. On the date in question, a regular customer entered the salon along with some individuals who were below the legal age to consume alcohol. The customers were assigned different manicurists for their pedicures. During the service, champagne was served.

Unlike the other manicurists, Fried followed Wynn's policy and asked his client, who appeared to be under the age of 30, whether she was of legal age to drink. ECF No. 27-5 at 4, 6. His client admitted she was not, so he intercepted the salon attendant who was bringing the champagne, Haley Lager (Lager), and took his client's champagne away. *Id.* at 9. He also told Lager that his client was underage. *Id.* About 15 minutes later, Lager served a second round of drinks and gave a champagne to Fried's client. *Id.* at 12; ECF No. 27-6 at 13. Fried contends he never noticed his client had been served champagne because he was focused on the client's toes and on timely completing the service after the client changed her mind about what she wanted. ECF Nos. 27-5 at 10; 31 at 5.

After the pedicures were completed, the customers mentioned to a male barber in the salon that the underage individuals had received champagne. ECF No. 27-5 at 22. The barber reported this to the salon manager, Sarah Barajas (Barajas), at which point an investigation was commenced. *Id.*; ECF No. 27-4 at 26. That investigation was conducted by Sandra Rodriguez (Rodriguez) of Wynn's Employee Relations department, who recommended that Fried and Lager be terminated. ECF Nos. 27-4 at 12; 27-5 at 12; 27-6 at 13. The reasoning was that they were

the only two employees who knowingly allowed an underage client to obtain an alcoholic beverage. ECF No. 31-3 at 23-29. Although Fried denied he knew his client received the beverage, Wynn determined that he did because he was observed on the video looking up at his client several times while she had a flute of champagne in her hand and he assisted her out of her chair while she was holding the champagne. ECF Nos. 27-5 at 12, 15, 20; 31-1 at 30.

Fried contends Wynn's decision is illogical because he was the only manicurist who followed Wynn's policy of asking those who appear under the age of 30 if they are of legal drinking age and he took her drink away, so it would make no sense that he would later knowingly allow his client to have alcohol. He contends he never saw his client with champagne because he was focused on providing her pedicure, and he points to testimony from other manicurists that this is entirely possible from their experience. And he notes that Wynn's decision essentially rewards the female manicurists for violating Wynn's policy of checking anyone who appears to be under the age of 30.

The Wynn's termination decisions may have been unwise and even unfair, but the Wynn was allowed to draw the line between those who knowingly served alcohol to an underage client and those who did not, so long as it did not draw the line based on gender. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1147 (9th Cir. 2017) (stating "an employer's true reasons need not necessarily have been wise or correct, as long as they are not discriminatory" (quotation omitted)). No reasonable jury could find Wynn's decision was pretext for gender discrimination because it fired a female salon employee for the same conduct in the same incident as Fried. Moreover, the termination decision was made by employees who did not work in the salon and who are not alleged to have participated in or known about the alleged gender discrimination in the salon. *See* ECF Nos. 27-4 at 8, 13, 27; 27-6 at 33; 31-1 at 107.

5

Fried denies he knowingly allowed his client to have champagne, but the Wynn need not be correct in its disciplinary decision, it just must not be discriminatory. *Merrick*, 867 F.3d at 1147. The Wynn investigator reviewed the videotape which showed Fried looking up several times at his client and helping her out of her chair while she held champagne. Fried also mentioned in his voluntary statement that he saw his client had champagne when he was "almost done with the service." ECF No. 27-5 at 9. The question here is not whether Wynn made a proper termination decision but whether it made a discriminatory one. No reasonable jury could find that it did.

Fried relies on other incidents of gender discrimination in the salon as circumstantial evidence that his termination was based on gender. First, he argues that the females received more appointments than the males and that the salon's managing director, Claude Baruk, once took an appointment away from Fried because he thought a female could perform the service better. However, Fried admitted at his deposition that the imbalance in appointments was caused by customer preferences and he could not come up with a solution for this problem other than the balancing system that he created for the salon.[1] ECF No. 27-3 at 8-12, 28. And there is no evidence Baruk was involved in the termination decision, so the single instance of him allegedly taking an appointment away does not raise an inference of gender discrimination motivating the termination. ECF Nos. 27-4 at 13; 27-6 at 33.

Fried and fellow male salon employee Van Lee Duong testified that the male employees were verbally reprimanded when similarly situated female employees were not. ECF Nos. 31 at 3; 31-2 at 2. However, they do not identify specific examples nor do they explain how they, as

---

[1] Fried has not argued that the Wynn's accommodation of the customers' preferences was itself discriminatory, so I do not address that issue.

6

non-management employees, would know whether female employees were reprimanded for similar conduct. ECF No. 27-3 at 18 (Fried admitting that he was not a management employee and would not have access to other employees' disciplinary records). Nor has Fried presented evidence that the individuals who gave him verbal reprimands were involved in his termination decision.

Finally, Fried argues that he had to apply for medical accommodations when similarly situated female employees did not have to do so. However, the evidence shows that the female employees likewise had to apply for accommodations. ECF No. 27-4 at 12, 23.

In sum, no reasonable jury could find the Wynn's reason for terminating Fried was pretext for gender discrimination. I therefore grant Wynn's motion for summary judgment on this claim.

**B. Hostile Work Environment**

"A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). "To establish the existence of a hostile work environment, a plaintiff must prove that (1) [he] was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Id.* (quotation omitted).

The harassing conduct must be both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). When assessing whether conduct is objectively offensive, I view the conduct from "the perspective of the reasonable victim." *Brooks v. City of*

*San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). To determine whether an environment is hostile, I consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quotation omitted). "Not every insult or harassing comment will constitute a hostile work environment." *Id.* But "[r]epeated derogatory or humiliating statements . . . can constitute a hostile work environment." *Id.*

"A single incident of harassment . . . can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (internal quotation marks omitted). However, that single incident must be "extremely severe." *Brooks*, 229 F.3d at 926.

Fried has not presented evidence from which a reasonable jury could find that the sporadic comments regarding wearing a wig, that he should find a job cooking, or that he enjoyed the customer's sexual remarks were sufficiently severe and pervasive to create a hostile work environment. *See* ECF Nos. 31 at 3, 5. Courts have rejected hostile work environment claims on more severe and pervasive conduct. *See, e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798-99 (9th Cir. 2003) (no hostile work environment where colleagues told used the phrase "China Man," pulled eyes back with fingers to mock appearance of Asians, and ridiculed plaintiff for word mispronunciation); *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642-43 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (no hostile environment where employee was yelled at in front of others, told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field").

////

As for the incident where Fried's supervisor allegedly made him continue to provide service to a customer who was sexually propositioning him, a single incident can constitute a hostile work environment. But considering the totality of the circumstances, the incident was less severe than those where courts have found a single incident could support a hostile work environment claim, such as where the employee was raped by a client. *See, e.g.*, *Little*, 301 F.3d at 964. Fried was not touched physically, other than a brief touch on the arm. ECF No. 27-3 at 20-21. And the incident did not unreasonably interfere with his work performance. He was not isolated in a room alone with the customer where others could not observe, and he was able to complete the customer's appointment (which lasted approximately 35 minutes). ECF No. 27-3 at 19-23. I therefore grant Wynn's motion for summary judgment on the hostile work environment claim.

### C. Retaliation

To make out a prima facie retaliation case, a plaintiff must show that he or she "engaged in protected activity," that he or she suffered a "materially adverse action," and that "there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). "An employee engages in protected activity when [he] opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Id.* (quotation omitted). An adverse employment action means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1242-43 (quotation omitted).

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "This requires proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." *Id.* at 360. Causation "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244 (quotation omitted). The plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

I grant Wynn's motion for summary judgment on this claim because Fried has not presented evidence from which a reasonable jury could find that the Wynn employees who made the decision to terminate Fried's employment knew about his protected activity in complaining to Barajas about the client who sexually propositioned him. The investigation was conducted by Rodriguez, who is the one who recommended Fried and Lager be terminated. The four individuals who approved the termination did not work in the salon and there is no evidence they knew about Fried's complaint. ECF Nos. 27-4 at 13; 31-1 at 107.

Fried points to evidence that Barajas was the "originator" of his termination notice. ECF No. 31-1 at 107. But that same evidence shows that four other individuals outside of the salon "approved" the termination. *Id.* Barajas, who was no longer employed by Wynn at the time of her deposition, testified that she did not participate in the decision to terminate Fried. ECF No. 27-4 at 27.

Finally, Fried argues that causation can be inferred from the proximity in time between his complaint to Barajas and his termination. But proximity must be considered in factual context. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). The alcohol incident occurred the day after Fried complained to Barajas about his client. ECF Nos. 27-3 at 20; 31 at 4.

Additionally, the decisionmakers were unaware of his complaint. Thus, the timing alone does not raise an inference of retaliatory motive under these circumstances. Consequently, a reasonable jury could not find that his complaint to Barajas was the but-for cause of his termination.

## II. CONCLUSION

I THEREFORE ORDER that defendant Wynn Las Vegas, LLC's motion for summary judgment **(ECF No. 27) is GRANTED**. The clerk of court is instructed to enter judgment in favor of defendant Wynn Las Vegas, LLC and against plaintiff Vincent Fried, and to close this case.

DATED this 26th day of March, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE